MILLER v TOSSAVA

1. Equity—Misrepresentations—Basis for Relief.

Innocent misrepresentations made by a defendant prior to the sale of a house trailer to plaintiff may constitute a basis for equitable relief.

2. Automobiles—Mobile Home—Certificate of Title.

A case in which the central issue is the sale of a mobile home and where the record does not show that a properly executed Michigan certificate of title was obtained by any of the defendants, nor that defendants tendered such a certificate to plaintiff, nor that the party from whom defendants obtained title was a record holder of title and thereby authorized to sell the mobile home, must be remanded to the trial court to determine if the attempted sale of the mobile home was valid.

3. Equity—Failure to Perform—Misrepresentation—Damages.

A finding by the trial court, in an action in equity for cancellation and rescission of a contract for the purchase of a mobile home, that defendant had informed plaintiff that a properly executed title certificate would be delivered within a reasonable time, and that such delivery was not made, requires the trial court to conclude that defendant failed to perform; that failure constitutes a misrepresentation and entitles the plaintiff to cancellation and rescission of the contract and a return of the purchase price, less the fair rental value of the mobile home during the period of occupancy by the buyer.

Appeal from Houghton, Stephen D. Condon, J. Submitted Division 3 June 15, 1972, at Iron Mountain. (Docket No. 11986.) Decided September 26, 1972.

References for Points in Headnotes

[1] 27 Am Jur 2d, Equity § 22.
[2] 47 Am Jur, Sales § 870.
[3] 7 Am Jur 2d, Automobiles and Highway Traffic § 36 *et seq.*

Complaint by Nellie V. Miller against Hubert Tossava, Willie Tossava, and Hue's Auto Sales, for cancellation and rescission of a contract and for a refund of the purchase price of a mobile home and damages for misrepresentation. Judgment for defendants on both counts. Plaintiff appeals from denial of the equitable relief only. Remanded for further proceedings.

*J. B. Jenkins,* for plaintiff.

*Wisti & Jaaskelainen* (by *John A. Mikkola),* for defendants.

Before: FITZGERALD, P. J., and HOLBROOK and T. M. BURNS, JJ.

FITZGERALD, P. J. Plaintiff, Nellie Victoria Miller, filed a two-count complaint on August 7, 1969, seeking cancellation and rescission of her contract for the purchase of a mobile home from defendants. Plaintiff also sought a refund of the purchase price of the house trailer and damages alleged to have been suffered by plaintiff as a result of misrepresentations made by defendants in the sale of the mobile home. The trial court, on July 10, 1970, ordered that the equitable issues of count 1 of plaintiff's complaint be separated for trial from the legal issues of count 2. Trial of the equitable issues before the court, sitting without a jury, commenced on October 15, 1970. A judgment denying plaintiff's request for equitable relief was entered on December 31, 1970. The subsequent trial of the legal issues, before a jury, resulted in a verdict of no cause of action in favor of defendants. Plaintiff's motions for new trial of the equitable issues and for judgment notwithstanding the verdict, or new trial of the legal issues, were denied.

This appeal, filed as a matter of right, is taken from the denial of the requested equitable relief.

In October 1962 defendant Hubert Tossava purchased the mobile home in question which was located in a trailer court in Laurium, Michigan. Financing for the purchase of the house trailer by defendant was had through the Merchants & Miners Bank in Calumet. That bank, it appears, bought the trailer and sold it in turn to defendant Tossava. The details of the transaction by which Merchants & Miners Bank obtained title are not spelled out, however, in the record. The record reveals that, unbeknown to defendant Tossava, the Calumet bank experienced difficulty, arising out of prior foreclosure proceedings, in obtaining physical proof of title to the mobile home and, in fact, did not obtain title to the vehicle until late in 1969, after defendant had paid off the balance owing the bank and had offered the mobile home for sale to plaintiff. The record contains a copy of the South Carolina certificate of title to the house trailer in question. A study of that document reflects ownership of the trailer to be in Donald L. and Lois M. Whitehead who, according to the certificate, were South Carolina residents. Nowhere thereon do the names of either the Merchants & Miners Bank, defendants Tossava, or defendant Hue's Auto Sales appear.

Plaintiff visited and inspected the mobile home on several occasions prior to purchasing the home. On July 31, 1968, plaintiff paid $200 down on the purchase price of the mobile home, paid the balance of $3,300 on August 9, 1968, and took possession approximately one month later. The mobile home was, at the time of plaintiff's purchase, situated on land owned by the defendants. As a part of the agreement between the parties the

land was leased to plaintiff rent-free until June 1, 1969. The agreement contained an option to purchase. If the option was not exercised by plaintiff, a monthly rental of $15 was to be paid thereafter by her. Plaintiff neither exercised her option to purchase by June 1, 1969, nor paid the agreed monthly rent thereafter at any time prior to her abandonment of the mobile home in December 1969.

Plaintiff, in count 1 of her complaint, averred in part the following:

"3. That the defendants alleged said trailer house was fit for habitation, in particular that it did not leak, that the sewer and water systems were functioning and that the furnace was in operating condition and that they would provide a title to plaintiff;

"4. That although plaintiff has fully performed her obligations under the contract, defendants have yet to provide her with a title, the furnace has never functioned properly, the sewer lines were in fact not sewer piping at all but were stove pipe and the water line ran directly through the sewer pipe, a condition of gross insanitation; that the roof of the trailer has leaked since the plaintiff has taken possession thereof, that the plaintiff, relying on the representations of defendants, moved into said trailer house and shortly thereafter and up to the present time has had continual trouble with leaking from the roof of the trailer, the furnace in the trailer, and the water and sewer lines and, although frequently demanded by plaintiff, defendants have never corrected these faults nor provided her with her title;

"5. That defendants were made aware of the deficiencies in the trailer and in fact at one time did unsuccessfully attempt to make some repair on the roof, but failed and refused to make any repairs to the furnace, sewer line or water line;

"6. That plaintiff stands ready to return to the defendants above described trailer house * * * ."

By answer, defendants denied each of the foregoing averments.

At the trial of the equitable issues, plaintiff Miller testified as to the alleged defects which existed in the mobile home during her occupancy. She stated that the roof leaked when she moved in, but was repaired by defendants. She testified that the furnace did not heat the back bedroom so that the mobile home was cold in the winter and not comfortable as defendants had purportedly assured her. The furnace problems necessitated service calls. Further, plaintiff stated that the water pipes froze in the winter and that the sewage backed up in the bathtub, allegedly due to the installation of improper sewer pipes. Plaintiff, it was testified, was forced to make repairs to the sewer line. Plaintiff stated that she would have moved out in the winter of 1968–1969 if she could have afforded to do so. She testified that when she did move out in December of 1969 she shut off the water so that the pipes would not freeze, returned occasionally to inspect the trailer, and repaired windows which were broken after her departure.

Plaintiff also testified that she was not offered the title to the mobile home, despite her requests therefor, until 15 months after the purchase of the home. The record reveals that title was offered to plaintiff in or about November 1969, at approximately the time that she abandoned the home, and that upon advice of her attorney she refused to accept the title document at that time.

Defendant Hubert Tossava testified that he and his wife had lived in the mobile home in question for six years and had found the temperature to be comfortable, with the exception that in severe weather an auxiliary heater was employed. He stated that they had experienced some trouble

with water freezing but had never experienced a problem with sewage blockage or backup. He stated that at the time he and his wife moved out of the trailer, in the interval prior to plaintiff's purchase thereof, everything was in proper working order. He stated that prior to plaintiff's purchase he did inform her of potential problems related to cold weather conditions and testified that plaintiff was informed of the need for an auxiliary heater.

Defendant Tossava also testified that he owed a balance on the purchase price of the house trailer at the time he sold it to plaintiff and that it was his belief, at that time, that title to the mobile home was in the Merchants & Miners Bank in Calumet. He stated that he learned upon selling the trailer that his belief regarding the location of the title was ill-founded and that he informed plaintiff that when he obtained title from the bank, it would be forwarded to her. Tossava, after obtaining the certificate of title to the mobile home in November 1969, offered it to plaintiff, at which time it was refused. The certificate, a South Carolina document, does not appear to have been in proper form at the time of defendants' tender thereof to plaintiff. No justification is shown for defendants' apparent failure to obtain and tender a properly executed Michigan certificate of title.

Paul Koljonen, an assistant cashier at the Merchants & Miners Bank in Calumet, testified as to the difficulties experienced by the bank in its efforts to secure title to the house trailer in question, the difficulties having begun in 1962 and not having culminated until 1969 when the bank finally received title thereto. Witness Koljonen testified that at the time defendant Tossava purchased the mobile home and financed it through

the bank, Tossava would be justified in expecting that the certificate of title to the trailer would be at the bank, and that, in the witness's opinion, Tossava had a right to assume that the certificate of title was at the bank at the time he sold the trailer to plaintiff in 1968. There is nothing in the record to indicate why the Merchants & Miners Bank was not joined as a party defendant.

In its opinion, the trial court set forth in part the following findings and conclusions:

"Plaintiff alleged that defendants falsely represented that the mobile home was fit for habitation, that the roof did not leak, that the sewerage system functioned properly and that the furnace was in good operating order; that plaintiff relied thereon and was induced thereby to enter into said agreement and that because of said false and fraudulent representations she has been damaged thereby. Defendants, on the other hand, deny any false representations; that plaintiff inspected the property on three or four different occasions and was well acquainted with all of the conditions of the mobile home; that plaintiff knew defendants had and were living in the mobile home and that the only representations made to plaintiff were that the trailer was comfortable and in working order; and that difficulties experienced by plaintiff were normal difficulties that any home owner experiences in this locality. Plaintiff and her son testified as to their experiences together with a Mrs. Alatalo who said she visited plaintiff on several occasions and corroborated plaintiff's testimony but also saying 'it [the house trailer] seemed comfortable'; defendant testified and denied any false representations, related his experiences in living in the home, and customary problems with reference thereto. A Mr. Koljonen, from the bank, testified as to the problems that it had to secure the transfer of title and that defendants had a right to rely on the bank furnishing title after payment of the lien. The parties could not reach an understanding with reference to their differences and the present litigation resulted.

*"Conclusions of Law*

"That the failure to furnish plaintiff with legal title to the mobile home was due to the fault and negligence on the part of the Merchant & Miners Bank in not properly taking the necessary steps in processing the original loan to defendants and in their neglect to take the proper steps to safeguard the defendants' interest. This, the defendants had a right to rely on and the delay in being able to provide plaintiff with her title, the court concludes, was not due to any fault or misrepresentation on the part of defendants.

\* \* \*

"The court finds that plaintiff has not met the burden of proof by a preponderance of the evidence and has not shown sufficient facts to sustain her request for equitable relief. In other words, plaintiff has not shown by sufficient evidence that fraudulent representations were made by the defendants and that she relied thereon to her damage."

On appeal, plaintiff claims that the trial court committed error in finding a lack of sufficient evidence of fraudulent representations so as to entitle her to equitable relief as requested. She asserts that the alleged defects in the trailer house which she set forth in her complaint were examples of defendants' fraudulent representations[1] or failure to disclose material facts. She contends, and correctly so, that even if misrepresentations were made innocently by defendants prior to the sale of the house trailer, such misrepresentations

---

[1] " 'The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.' " *Candler v Heigho,* 208 Mich 115, 121 (1919).

may also constitute a basis for equitable relief.[2]

Defendants contend that the defects alleged by plaintiff to have existed in regard to the house trailer in question were normal maintenance problems experienced with any seven- or eight-year-old mobile home in a climate such as that in Michigan's Upper Peninsula; and that plaintiff had been informed by defendant Hubert Tossava at the time she purchased the house trailer of various problems known to defendant which plaintiff would encounter in the course of maintaining the home.

Having reviewed the record in this cause, we are convinced that the question as to what defendants did or did not tell plaintiff as regards the "livability" of the mobile home is a factual determination best made by the trier of fact after hearing all of the testimony and observing the demeanor of the witnesses. Upon an examination of the entire record, we are of the opinion that we would not have been required to arrive at a different result had we been in the position of the trial judge. *Balcer v Peters,* 37 Mich App 492 (1972).

The thrust of plaintiff's argument is directed

---

[2] The trial court, in its opinion on motion for new trial, stated that the thrust of plaintiff's request for equitable relief was founded upon fraud, and stated that the elements of actionable fraud, as set forth in *A & A Asphalt Paving Co v Pontiac Speedway, Inc,* 363 Mich 634, 639 (1961), had not been shown to exist in the instant case. The court did not set forth the fact that a suit for rescission or cancellation of a contract on the ground of fraud may also be predicated upon innocent misrepresentation. As is stated in 13 Am Jur 2d, Cancellation of Instruments, § 19, p 513:

"In an equitable suit for rescission or cancellation of a contract on the ground of fraud it is generally considered immaterial that the false representation inducing execution of the contract was made innocently rather than with a knowledge of its falsity. The right of rescission, as distinguished from the right to recover damages in a common-law action for deceit, does not depend on actual fraud. The basis of a suit in equity to rescind is not actual fraud, not whether the party making the statement knew it to be false, but whether the statement made as true was believed to be true, and therefore, if false, deceived the person to whom it was made. * * * "

toward the failure of defendants to provide plaintiff with title to the house trailer in question at the time of the purported sale of the trailer to plaintiff; and toward the alleged error on the part of the trial court in not declaring the sale void for failure of defendants to comply with portions of the Michigan title law.[3] Plaintiff claims, in this regard, that defendants made misrepresentations to her as to the title to the mobile home, defendants having represented that they owned the house trailer and that the Merchants & Miners Bank had actual possession of the certificate of title. She claims that defendants failed to inform her that the mobile home was encumbered and that they were unconcerned as to whether there was a title to the trailer. She further claims that defendants in fact lacked knowledge as to whether they indeed owned the home. Plaintiff contends that, not having had title to the trailer, she could not prove that she owned the trailer and could not sell it or trade it on another mobile home. There is no evidence in the record, however, that plaintiff would have been able to sell or trade the house trailer. Indeed, the evidence showed that plaintiff, for a period of time, did not have sufficient funds to allow her to move from the trailer. Additionally, as heretofore noted, the record shows that plaintiff paid no lot rental during the entire period of her occupancy. Plaintiff also notes, and the record makes clear, that when she was finally

[3] MCLA 257.233(d); MSA 9.1933(d) states:

"The owner [of a registered vehicle] shall indorse on the back of the certificate of title an assignment thereof with warranty of title in the form printed thereon with a statement of all security interests in said vehicle or in any accessory thereon, sworn to before a notary public or some other person authorized by law to take acknowledgements, and deliver or cause the same to be mailed or delivered to the department or to the purchaser or transferee at the time of the delivery to him of such vehicle, which shall show the payment or satisfaction of any security interest as shown on the original title."

offered the certificate of title to the mobile home
the South Carolina title document did not contain
the names of any of the defendants and was signed
in blank and undated.

Defendants counter by asserting that plaintiff
herein had the rent-free use, benefit, and enjoy-
ment of the mobile home for 14 months before the
question of ownership arose; that the testimony
showed that defendants were justified in expecting
title to be in the Merchants & Miners Bank; that
when the certificate of title was obtained and
tendered to plaintiff, she refused to accept it; and
that the record indicates no damage or injury
suffered by plaintiff on account of failure to pos-
sess the title.

The record reveals that plaintiff did not plead
the title transfer statutes.[4] In effect, the trial court
did rule, however, that the delay in tendering title
for transfer to plaintiff was not the fault of defend-
ants, and the court refused to void the sale on that
basis.

In reviewing the record, which contains copies of
documents pertinent to this case, we find included
therein the South Carolina certificate of title to
the mobile home in question denoting Donald L.
and Lois M. Whitehead, South Carolina residents,
as the owners thereof; an assignment of title, in
blank, signed by the Whiteheads as sellers, and a
discharge of lien, attached to the certificate, denot-
ing that a lien on the vehicle had been discharged.
On none of the documents does the Merchants &
Miners Bank, or defendants Tossava or Hue's Auto
Sales appear as owners of the mobile home in
question.

---

[4] GCR 1963, 111.1, 112.7. 2 Callaghan's Michigan Pleading & Prac-
tice (2d ed), § 21.28, p 28, states in part: "[I]f the cause or defense is
founded on statute, apt reference should be made thereto in order to
advise the opposite party * * * ."

In *Schomberg v Bayly,* 259 Mich 135, 139 (1932), the following is stated:

"If the sale of a motor vehicle is otherwise effected, title thereto passes, and the sale becomes fully consummated, upon delivery of the certificate of title *properly executed.* Until delivery of the assigned certificate, title does not pass, and no sale results; but delivery of the certificate of title properly assigned, notwithstanding such delivery is belated, passes title and consummates the sale." (Emphasis supplied.)

The record in the instant case does not indicate that a properly executed Michigan certificate of title was obtained by defendants or any of them, nor that defendants tendered such a certificate to plaintiff. A valid sale of the house trailer to plaintiff does not, therefore, appear to have been consummated. Nor does it appear from the record that Merchants & Miners Bank was, indeed, a record holder of title to the house trailer and authorized thereby to sell the mobile home to defendants, or any of them. Because of the many questions which a review of the record leaves unanswered, we are compelled to remand this case to the trial court for such further hearings and findings as may be necessary to determine whether the attempted sale of the house trailer to plaintiff was valid and for final disposition. Upon remand, it may be that the trial court will find that the defendants had informed plaintiff that they would deliver to her a title certificate within a reasonable time, and that a properly executed certificate was not delivered. In that event, the court should conclude that the defendant failed to perform, and that such failure of performance constituted a misrepresentation. Such a determination would entitle plaintiff to cancellation and rescission on the contract and a return of the purchase price of

the mobile home, less the fair rental value of the home during the period of her occupancy.

Remanded for further proceedings consistent with this opinion. This Court does not retain jurisdiction in this matter.

Costs to abide outcome.

All concurred.